**Donald BARBER**

v.

**EXETER–WEST GREENWICH SCHOOL COMMITTEE et al.**

**EXETER–WEST GREENWICH REGIONAL SCHOOL DISTRICT**

v.

**Donald BARBER et al.**

**Nos. 77–443–M.P., 78–95–M.P.**

Supreme Court of Rhode Island.

Aug. 6, 1980.

---

Natale L. Urso, Thomas J. Liguori, Jr., Westerly, for Donald Barber.

Bradford Gorham, Providence, for Exeter-West Greenwich School Committee.

OPINION

DORIS, Justice.

In the matter now before us we granted petitions for writs of certiorari brought by Donald Barber and the School Committee of the Exeter-West Greenwich Regional School District (school district) to review a decision of the Superior Court concerning the nonrenewal of Mr. Barber's teaching contract.

Donald Barber was initially employed as a teacher by the school district in November 1970. He received his first annual contract in February 1971 for the 1971–72 school year. In February 1972, his contract was renewed for the 1972–73 school year. On November 27, 1972, George R. Finch Jr., the principal of the school at which Barber was teaching, informed him that his teaching performance was not satisfactory.[1] The following February, Mr. Finch recommended that Barber not be rehired. At a special meeting held on February 15, 1973, the school committee voted to rehire Barber for the 1973–74 school year on the condition that he be dismissed if he ever again struck a student.

Following two incidents in which Barber struck a student, the school committee, on January 14, 1974, voted to suspend Barber for two weeks and to place him on probation for one more year. The probationary status was to negate any consideration of tenure for that year. In February of 1974,

---

1. The dissatisfaction with Barber's performance arose from his frequent tardiness and his physical abuse of students. Mr. Finch stated that he would recommend that Barber not be rehired unless he improved his conduct, and he threatened to have Barber immediately dismissed if he further abused any students.

the school committee voted not to renew Barber's contract. Subsequently, however, Barber was rehired for the 1974–75 school year, during which he spent half of his time running a drug prevention program and the other half teaching in the classroom. On February 24, 1975, the school committee voted not to reappoint Barber as a teacher for the 1975–76 school year. The school superintendent wrote to Barber on February 25, 1975, informing him of the school committee's decision.[2] By letter dated April 10, 1975, Barber requested, and was subsequently granted, a hearing before the school committee,[3] which, on January 21, 1976, voted to deny Barber's appeal for reinstatement. The committee concluded that Barber had not acquired tenure because he had accepted employment for the 1974–75 year on continued probationary status and because his service had not been satisfactory. The committee also further stated first that even if Barber was to have been considered to have tenure, he had received adequate notification of his termination and the reasons therefor—and second that good and just cause existed for his termination.

Barber appealed the decision of the school committee to the associate commissioner of education.[4] Reasoning that a teacher obtains tenure after three years of service unless his contract for the following year is not renewed and he therefore receives adequate notice of the nonrenewal, the associate commissioner ruled that Barber had acquired tenure and was entitled to receive a statement of cause for his dismissal and a hearing thereon in accordance with G.L. 1956 (1969 Reenactment) § 16–13–4. Although the associate commissioner found that the school committee had failed to adopt a statement of cause for not rehiring Barber, he ruled that the superintendent's letter of February 25, 1975, adequately apprised Barber of the committee's reasons for acting and thus complied with the statement-of-cause requirement of § 16–13–4. Because Barber, after repeated warnings, had failed to remedy his problems concerning frequent tardiness and his striking of students, the associate commissioner also found that the committee had good and just cause not to renew Barber's contract. The associate commissioner, accordingly, denied Barber's appeal. On October 21, 1976, the State Board of Regents for Education affirmed the decision of the associate commissioner.

Barber appealed to the Superior Court from that part of the regents' decision upholding the nonrenewal of his contract. The school committee then cross-appealed, challenging the associate commissioner's finding that Barber had acquired tenure. The Superior Court held that it lacked jurisdiction under G.L.1956 (1969 Reenactment) § 16–13–4 to hear the school committee's cross-appeal, and for that reason denied and dismissed it. The Superior Court also found that Barber had received an adequate statement of cause and a quasi-judicial hearing on the matter and had not been deprived of his Fourteenth Amendment rights. For

2. The text of the superintendent's letter read as follows:

"The Exeter-West Greenwich Regional District School Committee voted *not* to renew your contract for 1975–76. This action was taken at a special school committee meeting on February 24, 1975.

"Your contract was not renewed after consideration of your evaluations over the past three years. It was noted that several of your weaknesses during your first year teaching still appeared on your evaluations of 1974–1975.

"This is official notice that your contract for 1975–1976 will not be renewed.

"You have the right to a prompt *public* or *private* hearing before the school committee in regards to this decision. You also have the right to be represented by counsel at a hearing before the school committee." (Emphasis in original)

3. The hearing began on May 29, 1975. Because the chairman of the committee became ill and later resigned, the hearings were not completed until October 29, 1975, after the chairman's replacement had been appointed. Mr. Barber had requested that the hearing not continue until all members of the committee were present.

4. The commissioner authorized the associate commissioner of education to hear Barber's appeal.

these reasons, the Superior Court affirmed the decision of the Board of Regents.

Barber subsequently petitioned this court for a writ of certiorari, which we granted on February 23, 1978. The school committee also petitioned for a writ of certiorari to review the Superior Court's findings that it lacked jurisdiction to hear the cross-appeal and that Barber had acquired tenure. We ordered the cases consolidated and, in addition to the issues raised in the petitions, we ordered the parties to brief three other questions of law.

The first question we ordered briefed raises the narrow issue of whether the Superior Court, its jurisdiction having properly been invoked by an aggrieved teacher pursuant to G.L.1956 (1969 Reenactment) § 16–13–4, also has jurisdiction to rule on issues raised on cross-appeal by respondent to the teacher's appeal.

Section 16–13–4 permits "[a]ny teacher aggrieved by the decision of the school board" regarding his dismissal to appeal first to the Board of Regents and subsequently to the Superior Court. The statute confers no right of appeal on any other person. This court has previously held that any other party aggrieved by a decision of the Board of Regents must seek judicial review by a common-law writ of certiorari in this court. *Jacob v. Burke*, 110 R.I. 661, 670, 296 A.2d 456, 461 (1972). We have yet to consider whether a party who otherwise could obtain judicial review only by writ of certiorari in this court may cross-appeal in the Superior Court after a teacher has appealed pursuant to § 16–13–4.

If we were to hold that the Superior Court lacked jurisdiction to hear the cross-appeal, we would create a bifurcated appellate process in those instances in which both a teacher and a school committee are aggrieved of a decision of the Board of Regents. We do not believe that it would be an economical use of our judicial resources to require the parties simultaneously to pursue judicial review in separate forums. It makes a good deal more sense to us to hold that the jurisdiction of the Superior Court, when invoked pursuant to G.L.1956 (1969 Reenactment) § 16–13–4, extends to the entire case, including issues raised on cross-appeal by a party who otherwise would have had no right of appeal to the Superior Court. *See* 13 Wright, Miller & Cooper, *Federal Practice and Procedure: Jurisdiction* § 3523 at 56 (1975); *cf. United States Mine Workers of America v. Gibbs*, 383 U.S. 715, 725–26, 86 S.Ct. 1130, 1138–39, 16 L.Ed.2d 218, 227–28 (1966) (federal court may hear pendent state law claims if federal jurisdiction properly invoked, operative facts the same, and judicial economy and fairness to litigants warrant a single trial.)

Because we have found that the Superior Court has jurisdiction to hear the school committee's cross-appeal, we need not answer the second question we ordered briefed.[5]

The third question we ordered briefed was whether the decision of the Board of Regents regarding Barber's acquisition of tenure was in accordance with law. The Board of Regents affirmed the decision of the associate commissioner, who had ruled that a teacher "acquires tenure upon the completion of three years of service unless his contract for the ensuing year has not been renewed * * *." We believe that the associate commissioner correctly interpreted the tenure statute.[6]

---

5. The second question asked whether, assuming the Superior Court had correctly declined jurisdiction over the cross-appeal, this court should treat the petition for certiorari as directed to a review of the regents' decision on the matter of tenure.

6. General Laws 1956 (1969 Reenactment) § 16–13–3 now provides:
   "Probationary period—Tenure after probation.—Three (3) successive annual contracts shall be considered evidence of satisfactory teaching and shall constitute a probationary period. Teachers who have given satisfactory service for three (3) years prior to April 24, 1946, and [thereafter] those who shall complete the probationary period, shall be considered in continuing service. No such teacher shall be dismissed except for good and just cause.
   "Any teacher appointed to a position of principal, assistant principal or vice principal within the school system in which said teach-

■ In order that a school committee may make an informed decision on whether to offer a teacher permanent employment, the Legislature has required that a teacher perform satisfactorily for a probationary period prior to becoming eligible for tenure. *See Jacob v. Board of Regents*, 117 R.I. 164, 169, 365 A.2d 430, 433 (1976); *Marzec v. Fremont County School District No. 2*, 142 Colo. 83, 86–87, 349 P.2d 699, 701–02 (1960) (en banc). The Legislature has provided that "[t]hree * * * successive annual contracts shall be considered evidence of satisfactory teaching and shall constitute a probationary period." General Laws 1956 (1969 Reenactment) § 16–13–3. The length of the probationary period is a matter exclusively within the domain of the Legislature; a school committee may not alter the length of the period by contract or otherwise. *State ex rel. Nobles v. Bienville Parish School Board*, 198 La. 688, 696, 4 So.2d 649, 651 (1941); *see Mannix v. Board of Education of New York*, 21 N.Y.2d 455, 457, 235 N.E.2d 892, 893, 288 N.Y.S.2d 881, 882 (1968) (statutory scheme exclusive means by which temporary appointment becomes permanent). To allow a school committee to impose contractual conditions that would extend beyond the third successive annual contract would effectively deprive a teacher of the basic protection afforded by the tenure statutes. *Id.* at 457, 235 N.E.2d at 893, 288 N.Y.S.2d at 882.

■ In the case before us, the school committee attempted to circumvent the provisions of the tenure statute by conditioning Barber's employment for the 1974–75 school year on his acceptance of continuing probationary status beyond his third successive annual contract. The imposition of this condition clearly contravenes the tenure statutes and it therefore had no effect on whether Barber acquired tenure. The statute, G.L.1956 (1969 Reenactment) § 16–13–3, clearly limits the probationary period to three successive annual contracts. Thus, Barber's probationary period expired

at the end of the 1973–74 school year. *See Jacob v. Board of Regents*, 117 R.I. at 169, 365 A.2d at 433. The subsequent hiring of Barber for the 1974–75 school year conferred on him the status of a tenured teacher, *see La Shells v. Hench*, 98 Cal.App. 6, 12, 276 P. 377, 379 (1929) (failure of school board to classify plaintiff as permanent teacher does not prevent classification by operation of law); *Developments in the Law—Academic Freedom*, 81 Harv.L.Rev. 1045, 1091 (1968) (reemployment at end of probationary period confers permanent status), who could be dismissed only in conformance with the teacher's tenure statutes.

■ Barber's first claim of error is that he was not afforded the procedural protections of the tenure statutes. There are five parts to this argument, the first of which is that two recent opinions of this court indicate that the statutes entitled Barber to a hearing prior to his dismissal. *See Jacob v. Board of Regents*, 117 R.I. at 169, 365 A.2d at 433; *Schiavulli v. School Committee of North Providence*, 114 R.I. 443, 447, 334 A.2d 416, 418 (1975). Although there is language in each opinion that supports Barber's contention, those portions of the opinions are dicta and are not controlling here. The statutory scheme envisions a hearing only if a teacher requests one after having received a statement of cause for his dismissal. General Laws 1956 (1969 Reenactment) § 16–13–4. We decline to construe § 16–13–4 as requiring a pretermination hearing.

Barber further claims that the school committee never provided him with a statement of cause for his dismissal as is required by § 16–13–4. The minutes of the meeting at which the school committee voted not to rehire Barber do not reveal the grounds on which it acted. The letter from the superintendent informing Barber of the committee's decision, however, indicated that the decision had been based on an appraisal of Barber's evaluations over the

er has attained tenure, shall, upon termination or resignation of such administrative position, be allowed to return to his former

status as a tenured teacher within said system."

past three years. The associate commissioner and the Superior Court found that the references to the unsatisfactory evaluations adequately informed Barber of the cause for his nonrenewal.

In November 1972, the principal of the school at which Barber was teaching informed him that his performance had been unsatisfactory in that Barber had been consistently tardy and had "been far too many times involved with charges of physical abuse of students * * *." The principal also warned Barber that he could face immediate dismissal if "another incident involving physical abuse" were to arise. In February 1973, the school committee met with Barber at a special meeting during which Barber was informed of the problems on his evaluations, including "hitting students as a method of class discipline * *." In recognition of Barber's positive qualities, however, the committee voted to rehire him on the condition that his contract contain a provision for Barber's immediate dismissal if he ever again struck a student. Two weeks later, the superintendent wrote to Barber outlining the conditions adopted by the school committee. In December 1973, the superintendent again wrote to Barber concerning a recent incident in which a student complained that Barber had grabbed him by the arm. The superintendent reminded Barber that such conduct was not permissible and again warned Barber that he was not to touch any student for any reason. In January 1974, the school committee voted to suspend Barber for two weeks following a meeting at which a student's parents had complained that Barber had hit their child. The superintendent again wrote to Barber to explain the committee's action.

■ In considering Barber's present argument that he did not receive a statement of cause for his dismissal, we agree with the Superior Court that the superintendent's letter of February 25, 1975, conveyed to Barber the reasons for the committee's decision. In light of the repeated instances in which Barber was reprimanded and warned about the consequences of striking students, we believe that the reference to Barber's prior evaluations was sufficiently specific to inform him that the committee was dissatisfied with Barber's inability to correct his problem in disciplining students.

■ We need not reach the merits of the final three parts of Barber's first argument because he has failed to preserve them properly for appellate review. Barber claims that certain hearsay evidence should not have been admitted into evidence at the school committee's hearing. Because Barber did not articulate the specific basis for his objections to the five reports he claims were erroneously admitted at the time they were admitted, he has lost his right to raise them on appeal. *Cf. Majewski v. Porter*, R.I., 403 A.2d 248, 252 (1979) (objection to jury instructions must call attention to question of law involved). Similarly, because Barber did not present to the Superior Court his arguments that the full committee was not present during all discussions of Barber's case and that the committee's decision was unreasonably delayed, he may not raise these issues for the first time in this court. *Wickes v. Kofman*, R.I., 402 A.2d 591, 594 (1979).[7]

■ Barber further argues that as a tenured teacher he had acquired a property interest in continued employment which could not be taken away without due process of law. We have recently stated that a "state employee who, under state law or rules promulgated by state officials, has a legitimate claim of entitlement to continued employment absent sufficient cause for discharge, may demand the procedural protection of due process. *Goss v. Lopez*, 419 U.S. 565, 573, 95 S.Ct. 729, 735, 42 L.Ed.2d 725, 733–34 (1975)." *Lynch v. Gontarz*, R.I., 386 A.2d 184, 188 (1978). A tenured teacher, who may be dismissed only for good and

---

7. For this reason we also decline to consider Barber's subsequent arguments that counsel for the school committee played an impermissible role in drafting the decision of the committee, that the delay in concluding the hearing and the use of hearsay violated his due process rights, and that the committee did not abide by its established rules and understandings.

just cause, G.L.1956 (1969 Reenactment) § 16–13–3, therefore has a legitimate claim of entitlement to his position and may not be deprived of it without due process of law under the Fourteenth Amendment. *See Paul v. Davis*, 424 U.S. 693, 710–11, 96 S.Ct. 1155, 1165, 47 L.Ed.2d 405, 419 (1976); *Goss v. Lopez*, 419 U.S. 565, 573–74, 95 S.Ct. 729, 735, 42 L.Ed.2d 725, 733–34 (1975); *Lynch v. Gontarz*, R.I., 386 A.2d at 188. We must now decide whether the procedures followed by the school committee conformed to the minimal requirements of due process.

▮▮▮ Barber contends that as a matter of due process he was entitled to a hearing prior to the school committee's decision not to rehire him. Although the Supreme Court has held that in some instances a pretermination hearing may be necessary, *see Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), this is by no means a universal requirement of due process. *See Mackey v. Montrym*, 443 U.S. 1, 99 S.Ct. 2612, 61 L.Ed.2d 321 (1979); *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976); *Arnett v. Kennedy*, 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974). Due process is a flexible concept and the degree of protection afforded to an individual may vary with the particular situation. *See Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972). We believe that the statutory procedures at issue in this case are consistent with the requirements of the due process clause.

▮▮▮ If, after considering a teacher's evaluations, a school committee votes to dismiss him, it must provide the teacher with a statement of cause at least one month prior to the end of the school year. The teacher may, within fifteen days, request a hearing before the full board and may appeal from that decision to the Board of Regents and then to the Superior Court. General Laws 1956 (1969 Reenactment) § 16–13–4. Although in this case the results of the hearing were delayed several

months, the delay was more directly attributable to the illness and subsequent resignation of the committee chairman than to any deficiency in the statutory procedures. Absent such extenuating circumstances, the hearing before the school committee should be concluded promptly after the teacher has requested it. We believe that the procedures employed by the school committee in dismissing Barber minimized the likelihood that the dismissal was erroneous and afforded him an expeditious posttermination hearing to remedy any errors that might have arisen. By so providing, the procedures satisfied the minimal requirements of due process. A prior hearing was therefore not necessary.

Barber finally contends that the school committee did not have good and just cause to dismiss him. Although this matter was not explicitly raised below, the Superior Court, by affirming the decision that Barber had been properly dismissed, implicitly found that sufficient cause existed. The matter is thus properly before us.

The associate commissioner of education determined that the school committee had reached its decision not to rehire Barber on the basis of the principal's testimony and prior evaluations of Barber's performance and that this evidence reflected "a continuing concern" about Barber's recurring violations of the corporal-punishment policy and his frequent tardiness for class. Relying on these factual findings, the associate commissioner concluded that the school committee had good and just cause to dismiss Barber.

▮▮▮ In reviewing a judgment of the Superior Court pursuant to a writ of certiorari, we may only inquire whether there is sufficient evidence in the record "to support the findings of the tribunal whose decision is being reviewed." *Guarino v. Department of Social Welfare*, R.I., 410 A.2d 425, 428 (1980); *Great Lakes Dredge and Dock Co. v. Norberg*, 117 R.I. 600, 613, 369 A.2d 1101, 1108–09 (1977). We find that the evidence

of Barber's continuing use of physical force as a means of classroom discipline despite the warnings that such conduct would lead to his dismissal adequately supports the Superior Court's judgment implicitly affirming the commissioner's finding of good and just cause.

The petitions for certiorari are denied and dismissed. The writs heretofore issued are quashed, and the papers certified to this court are ordered returned to the Superior Court with our decision duly endorsed thereon.

MURRAY, J., did not participate.