DECISION
This matter is before the Court on the appeal of Frederick Daly. ("Appellant") from a decision of the Rhode Island Board of Regents for Elementary and Secondary Education (the "Board"). The Board's decision, dated June 23, 2005, affirmed the prior decision of the North Kingstown School Committee (the "Committee") terminating Appellant from his tenured position as a music teacher within the North Kingstown School Department. The Board did not mail its written decision to Appellant until March 7, 2006. See Complaint at 11.[1] Appellant filed a timely appeal to this Court on March 15, 2006. Jurisdiction is pursuant to G.L. 1956 § 16-39-4 and § 42-35-15.
 Facts and Travel
The Committee first hired Appellant as a non-tenured music teacher for the 1971-1972 school year. Thereafter, Appellant worked as a non-tenured music teacher until the 1974-1975 *Page 2 
school year, at which time the Committee reappointed Appellant as a tenured teacher. Appellant continued his employment as a music teacher within the North Kingstown school system until the Committee voted to terminate him from his position on June 18, 1996.
Appellant's work history is rife with incidents of inappropriate conduct, coupled with progressively increasing discipline, beginning in 1978 and culminating in his termination at the conclusion of the 1996 school year. An in-depth discussion of every incident of bad behavior is unnecessary for the purposes of this Decision. Suffice it to say that Appellant's work records show that he has difficulty controlling his temper, as he has previously been disciplined for using loud, inappropriate, and abusive language in response to student behavior. He has been disciplined for failure to submit grades in a timely fashion, failure to properly secure transportation for a field trip, and investigated for his failure to appropriately chaperone a field trip. It is clear from the record that Appellant's superiors have expressed concern that Appellant's use of alcohol would result in a negative impact on his career, as Appellant was found to have had an odor of alcohol on his breath during teaching hours as far back as 1987. Appellant has also been found to have assaulted one student, and inappropriately touched another, with the incident involving inappropriate touching — although not of a sexual nature — resulting in a fifteen day suspension in May, 1991.
Additionally, Appellant was suspended a second time for his classroom conduct in April of 1995. On April 12, 1995, a group of fifth grades students at Hamilton Elementary School informed the principal, Manuel Perry, that Appellant had used inappropriate language, made derogatory comments, and verbally abused students in his music class. Specifically, Appellant was alleged to have used terms such as "crap," "dummies," "stupid," "idiot," and "stinking dummy" to refer to individual students or to the class as a whole. See Letter from Manuel H. *Page 3 
Perry to Paul Rennick (April 13, 1995). Also on April 12, 1995, the class alleged that Appellant verbally abused a student by placing his face approximately six inches in front of that of the student and shouting, "Sing louder! Sing louder! I can't hear you." Id.
Additionally, several students had reported on April 6, 1995, that Appellant had sworn in Italian at a fifth grade student who had forgotten his musical instrument. Id.
As a result of these incidents, Appellant entered into a suspension agreement, dated May 3, 1995, in lieu of a formal disciplinary proceeding before the Committee. Without admitting to any of the specific complaints against him, Appellant acknowledged that he had used "inappropriate language and classroom management techniques."See Agreement between the North Kingstown School Committee and Frederick Daly (May 3, 1995). Appellant consented to suspension without pay or benefits from May 3, 1995, to the end of the 1994-1995 school year.Id. This suspension was to remain in effect during the 1995-1996 school year, with Appellant scheduled to teach instrumental music classes only.[2] Id. Before being allowed to return for the 1995-1996 school year, Appellant was required to undergo an assessment by Terrance Giblin, Ph.D, a human relations consultant, and participate in any recommended counseling. Id. Appellant also agreed that he would be "subjected to more intensive evaluation than usual, including frequent classroom observations by principal(s)" during the 1995-1996 school year. Id. Finally, Appellant agreed to appear before the Committee and apologize to students, parents, and the members of the Committee for his inappropriate behavior. Id.
Appellant returned to work at the beginning of the 1995-1996 school year, teaching only instrumental classes pursuant to the suspension agreement. Despite the suspension agreement's clear provision that Appellant would be undergoing more frequent and intensive evaluation than previously, it was not long until Appellant once again found himself facing potential discipline *Page 4 
for his conduct in the classroom. Two fifth-grade teachers at Forest Park Elementary School reported to the school's principal, Mr. Edward Ferrario, that students returning from one of Appellant's afternoon classes were afraid that Appellant was going to strike a student. The students also stated that Appellant smelled of cigarette smoke and alcohol, and several believed that he was drunk.
In response to these allegations, Superintendent Dr. James Halley (the "Superintendent") held a hearing on March 11, 1996. As a result of the hearing, the Superintendent suspended Appellant without pay, pending a full hearing and decision by the Committee. The Committee held its own hearing on the matter on March 19, 1996 and on March 22, 1996, the Committee informed Appellant that he was to be suspended with pay from the period from March 11, 1996 to March 19, 1996. The Committee further determined that he was to be suspended without pay, effective March 20, 1996 as a result of Appellant's "having engaged in smoking and alcohol use during school hours, and using loud and inappropriate language with certain students in [his] classes." The Committee also notified Appellant that it would hold a "full evidentiary hearing" on the matter on March 28, 199, at which Appellant was entitled to be represented to counsel, offer evidence, and examine witnesses.
The scheduled hearing did not take place on March 28, 1996. Instead, the Committee's counsel notified Appellant's attorney in a letter dated April 3, 1996, that the Superintendent had recommended that Appellant be terminated for his use of alcohol and tobacco during school hours as well as his use of loud and inappropriate language in class on February 2, 1996. The letter also advised Appellant that the Administration would attempt to enter evidence of Appellant's past disciplinary problems, including those that relate to his use of alcohol and tobacco during school hours, his inappropriate use of language and interaction with his students, *Page 5 
and his general dereliction of duties. Committee's counsel specifically referred to a list of nineteen separate documents that the Administration would attempt to introduce,[3] as well as stated that the Administration would emphasize the fact that Appellant had been suspended on three prior occasions. *Page 6 
On April 23, 1996, the Committee held a hearing to consider Appellant's termination.[4] The first witness to appear was Nicholas Rossi ("Rossi"), a fifth-grade student at Forest Park Elementary School who had been in Appellant's music class on February 2, 1996. Rossi testified that, before he went to Appellant's class in the afternoon, "a lot of people were saying that [Appellant] was drunk." Hearing Transcript 4/23/96 ("Tr.") at 18. Rossi stated that nothing seemed out of the ordinary when he first arrived at music class at 1:30 P.M. However, when Appellant stood up in front of the class, Rossi noticed that Appellant had a bump on the side of his head, and stated that Appellant smelled like beer. Rossi told the Committee that he can recognize the smell of beer because his parents occasionally drink beer, after which he is able to smell it on their breath. He also stated that Appellant's teaching was "a little different" from usual, in that Appellant erroneously told Rossi that he had been playing a wrong note, and he falsely accused Rossi of talking or giggling when he was not.Id. at 23. Rossi testified that he reported Appellant's behavior to his teacher, Mrs. Polidoro, upon his return from music class.
The next witness before the Committee was Matthew Anderson ("Anderson"), another fifth-grade student present in Appellant's class on February 2, 1996. Anderson told the Committee that he is learning to play the trumpet and that he attended Appellant's 12:45 P.M. class. Anderson testified that Appellant "smelled a little like alcohol when I first walked in [the classroom]." Id. at 31. He also told the Committee that he was familiar with the smell of alcohol because he has smelled it before on his parents' breath after they have consumed beer. Anderson also described an incident at the end of class as follows:
 Q. Okay. Was there anything unusual in his actions that day?
 ANDERSON: Yes. At the end of class —
 Q. Tell us what happened? *Page 7 
 A. Well, I was — sometimes the valves in the trumpet, they get stuck, and you can't blow through them, and so he said class was over, and I was just fixing it, and then I blew through it to see if it was right or not, and then he started yelling at me telling me that class was over, and I'm not the teacher and stuff, and he told me to look at him when I'm talking, and I didn't want to listen to it, and then he stopped, and then I went out of the classroom."
 Q. Okay. Had he ever addressed you like that before?
 A. No.
 Q. Did his words to you make you — what was your feeling when he was saying that to you?
 A. Well, everybody was scared.
 MR. LIGUORUI: Objection.
 Q. Why were they scared?
 A. Well, because if — well, they knew that he's never acted like that before, and some of the kids felt like he was going to hit someone. Tr. at 33.
Anderson then testified that he discussed Appellant's actions with other students on his way back to class, and that he agreed with other students who stated that Appellant was drunk.
Jean Maloney ("Ms. Maloney") then appeared before the Committee. Ms. Maloney is a fifth-grade teacher at Forest Park and, at the time of the hearing, had been a teacher for thirty-six years. Ms. Maloney testified that the students returning from Appellant's music class appeared agitated, and that they did not settle down as they ordinarily would. The students told Ms. Maloney that Appellant "had been yelling a lot, and that at one time they thought he might possibly be going to hit someone." Tr. at 42. The students also reported to her that the room smelled of cigarette smoke and alcohol. Id. at 47-48. Ms. Maloney explained that she was not able to personally verify the smell of alcohol on Appellant because she was not allowed to leave the classroom. She also stated that the principal, Mr. Edward Ferrario, was not present in school that day, but she reported the incident to him the following Monday, which was the next school day. *Page 8 
After Ms. Maloney finished testifying, the Committee heard from a second fifth-grade teacher, Jolene Polidoro ("Mrs. Polidoro"). Mrs. Polidoro stated that she had been a teacher since 1963, and that the 1995-1996 school year was her sixth year at Forest Park Elementary School. Mrs. Polidoro also testified that students returning to her class from Appellant's music class complained that they were frightened because they thought that Appellant was going to hit one of the students. Id. at 57. She also told the Committee that "[o]ne of my students thought or said to me they thought he was drunk." Id.
Appellant's counsel then called Edward J. Ferrario ("Mr. Ferrario") to the stand. Mr. Ferrario was the principal at Forest Park Elementary School for the 1995-1996 school year. Mr. Ferrario stated that he was not in school on February 2, 1996, but that he learned of the reported incidents in Appellant's class when he returned to school the following Monday, February 5, 1996. Mr. Ferrario conducted an investigation of the allegations against Appellant and observed Appellant's class on February 9, 1996, before meeting with him on February 13, 1996. Mr. Ferrario stated that William Daly,[5] the school's Director of Human Resources, questioned Appellant at the meeting about his actions on February 2, 1996. Mr. Ferrario met with Appellant again on February 16, 1996, and informed Appellant that he had received several letters from parents about the February 2 incidents. Mr. Ferrario testified that he did not recommend that Appellant be terminated because "I was never asked to make a recommendation by the superintendent or anyone else, and I didn't feel I had the right to, so I didn't make any recommendations at all."Id. at 78.
The final witness before the Committee was William Daly. William Daly did not testify to the events of February 2, 1996, or the subsequent investigation into the allegations. Rather, he *Page 9 
simply laid the foundation for the introduction of Appellant's work records into evidence, and therefore did not provide any substantive testimony. Appellant did not testify on his own behalf.
After the close of the hearing, the Committee notified Appellant by way of a letter, dated June 18, 1996, that it had voted to terminate his employment on the basis of the evidence presented at the April 23, 1996 hearing. The Committee stated that it found the two student witnesses to be credible based upon their demeanor and the fact that neither wavered nor hesitated on cross-examination. The Committee found that the testimony of the two teachers corroborating the students' statements was also credible. The Committee therefore made the factual findings that on February, 1996, Appellant had alcohol on his breath, used loud and inappropriate language with his students, and caused several of his students to fear him. The Committee then reviewed Appellant's personnel file and prior suspensions in conjunction with his actions on February 2, 1996, and concluded that good cause for his termination existed. The Committee terminated Appellant's employment, effective June 18, 1996.
Appellant appealed his termination to the commissioner of education in accordance with G.L. 1956 § 16-39-2, which states, in pertinent part, that "[a]ny person aggrieved by any decision or doings of any school committee . . . may appeal to the commissioner of elementary and secondary education." Although § 16-39-2 provides for a hearing before the commissioner, the parties agreed to forego a live hearing and submit various documents and transcripts to the commissioner. The commissioner issued a decision, dated January 29, 1999, affirming Appellant's termination.
On February 24, 1999, Appellant appealed the commissioner's decision to the Board, pursuant to § 16-39-3. Section 16-39-3 provides that "[a]ny decision of the commissioner in these matters shall be subject to an appeal to and review by the board of regents for elementary *Page 10 
and secondary education." For reasons not apparent to the Board, there was a delay in the transmission of the record of the case. Consequently, Appellant did not file his brief until May 20, 2002.[6] Thereafter, the Board issued a decision on June 23, 2005, affirming the commissioner of education. However, Appellant has represented to this Court that the Board did not mail a copy of its decision to the parties until March 7, 2006. Undaunted by his previous failures to have his termination reversed, Appellant filed his appeal with this Court on March 15, 2006.
Additional facts appearing in the record shall be incorporated into the Court's discussion as necessary.
 Standard of Review
Rhode Island General Laws § 16-39-4 allows any party aggrieved by a decision of the Board to obtain judicial review of that decision in accordance with "chapter 35 of title 42," the Rhode Island Administrative Procedures Act. Section 42-35-15 provides this Court with the specific authority to review decisions of administrative agencies, such as the Board. Under § 42-35-15(g), this Court is empowered to affirm, reverse or remand an agency's decision. In conducting its review, "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." §42-35-15(g). This Court may only reverse or modify an agency's decision if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:
 (1) In violation of constitutional, statutory, or ordinance provisions;
 (2) In excess of the statutory authority of the agency;
 (3) Made upon unlawful procedure;
 (4) Affected by other error of law;
 (5) Clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record; or *Page 11 
 (6) Arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion. Id.
When reviewing an administrative agency's factual findings, this Court "must uphold the agency's conclusions when they are supported by legally competent evidence on the record." Interstate Navigation Co. v. Divisionof Public Utilities and Carriers of R.I., 824 A.2d 1282, 1286 (R.I. 2003). Legally competent evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion, and means an amount more than a scintilla but less than a preponderance." Town of Smithfield v. Churchill Banks Cos.,LLC, 924 A.2d 796, 806 (R.I. 2007) (quoting Foster-Glocester RegionalSchool Committee v. Board of Review, 854 A.2d 1008, 1012 (R.I. 2004) (further citation omitted)). The term, "substantial evidence," is functionally equivalent to legally competent evidence. Town ofBurrillville v. R.I. State Labor Rels. Bd., 921 A.2d 113, 118 (R.I. 2007). In short, if an agency has applied the law correctly and an examination of the record reveals that the agency's decision is supported by some credible or competent evidence, this Court shall not disturb the agency's determination.
 Analysis
Appellant raises three issues on appeal to this Court. Appellant first contends that the Board erred in affirming his termination because the Committee never provided him with a complete statement of the cause of his suspension, nor did he have notice that his termination could result from the Committee hearing on April 23, 1996. Appellant next argues that — even if this Court were to find that he had received proper notice — the Committee was not presented with sufficient, legally competent evidence to find that it had just cause to terminate Appellant's employment. Finally, Appellant argues that, at the very least, he is entitled to back pay for the entire 1996-1997 school year because the Committee failed to comply with § 16-13-3, requiring *Page 12 
that "[w]henever a tenured teacher in continuous service is to be dismissed, the notice of the dismissal shall be given to the teacher, in writing, on or before March 1st of the school year immediately preceding the school year in which the dismissal is to become effective."
In rejoinder, the Committee argues that Appellant received constitutionally adequate notice — by way of the letter to his counsel, dated April 3, 1996 — that termination of his employment would be considered at the April 23, 1996 hearing. The Committee next contends that Appellant's argument that its decision was not based on substantial evidence constitutes merely a challenge as to the weight of the evidence adduced at the hearing. According to the Committee, it had before it substantial evidence to allow a finding that Appellant had engaged in alcohol use during school hours, as well as instilled fear in his students through the use of loud and inappropriate language. Responding to Appellant's argument that he was not provided with a notice of dismissal before March 1, 1996, the Committee states that Appellant has failed to raise the issue at any of the prior proceedings, and that it is therefore waived.
 Suspension and Termination Procedure
Appellant first argues that he did not receive proper notice of his suspension because such notice came from the Superintendent, and not from the Committee, in contravention of Rhode Island law. Section16-3-5(b) states, in relevant part, that "[w]henever a teacher is suspended by a school committee, the school committee shall furnish the teacher with a complete statement of the cause(s) of the suspension."
Our Supreme Court has already considered a similar argument inBarber v. Exeter-West Greenwich School Committee, 418 A.2d 13 (R.I. 1980). The petitioner in that case had been employed as a teacher in the Exeter-West Greenwich Regional School District from 1970 to 1976. The petitioner was subjected to frequent discipline as a result of his frequent tardiness and *Page 13 
physical abuse of students. Id. at 15, n. 1. On February 24, 1975, the school committee voted not to reappoint the petitioner as a teacher for the 1975-1976 school year; the superintendent notified the petitioner of the committee's decision in a letter dated February 25, 1975.Id. at 16. In appealing the committee's decision, the petitioner argued that the school committee failed to provide him with a statement of cause for his dismissal, as required by § 16-13-4.[7] Id. at 18.
The Supreme Court noted that the February 25, 1976, letter stated, in part that "[t]he Exeter-West Greenwich Regional District School Committee voted not to renew your contract for 1975-1976" (emphasis in original). Id. at 16, n. 2. The letter went on to inform the petitioner that his contract was not being renewed "after consideration of [his] evaluations over the past three years." Id. Rejecting the petitioner's argument, the Supreme Court found "that the superintendent's letter of February 25, 1975, conveyed to Barber the reason for the committee's decision." Id. at 19. The Court also stated that "the reference to Barber's prior evaluations was sufficiently specific to inform him that the committee was dissatisfied with Barber's inability to correct his problem in disciplining students." Id. Therefore, the Supreme Court implicitly found that the February 25, 1976, letter from the superintendent qualified as a sufficient statement of cause under §16-13-4.
This Court is aware that Barber, supra., involved an interpretation of § 16-13-4(b) while the instant case calls for this Court to construe § 16-13-5(b). The only relevant difference between the notice provisions of those sections is that notice of dismissal under § 16-13-4(b) is to be given by a school's "governing body," while notice of suspension under § 16-13-5(b) must be provided by the "school committee." Given that the Barber case involved the review of a decision of the school's governing body — the school committee — this Court finds that the *Page 14 
difference in language is merely semantic and that the Supreme Court's reasoning in Barber is equally applicable to the case at bar.[8]
Here, the Superintendent's letter to Appellant, dated March 22, 1996, stated that "[a] hearing was held on March 19, 1996 by the North Kingstown School Committee to discuss student complaints regarding your classroom behavior and conduct." The letter further informed Appellant that the Committee determined to suspend him, without pay, because Appellant had "engaged in smoking and alcohol use during school hours." Based on the holding in Barber, supra., this Court finds that this letter provided Appellant with adequate notice of the Committee's decision as well as the reasons for his suspension.
Appellant next argues that the Committee's April 23, 1996, hearing could result in, at most, his continued suspension. Appellant first refers the Court to language in his March 22, 1996, suspension letter stating that "a full evidentiary hearing on this matter has been scheduled for Thursday, March 28, 1996." Contending that he never received a second notice explicitly stating that the Committee had decided not to hold a suspension hearing, Appellant argues that the April 23, 1996 hearing was a suspension, and not a termination, hearing. Appellant's argument is unconvincing.
Rhode Island General Laws Section 16-13-5(b) entitles a suspended teacher to a hearing and appeal "upon request." Our Supreme Court has explicitly held that "[t]he decision as to whether a hearing shall be had on the cause stated is for the teacher to make on receipt of such notice. If, following suspension, no hearing is requested, none is required." Royal v. Barry, 91 R.I. 24, 32, 160 A.2d 572, 576 (1960). Here, there is no evidence showing — nor does Appellant *Page 15 
argue — that Appellant ever requested a hearing to review the Committee's decision to suspend him without pay.
Although the Committee did schedule a hearing for March 28, 1996, it is clear to this Court that the Committee decided to convene a hearingsua sponte, rather than in response to Appellant's request. The decision to hold a hearing is properly viewed as a discretionary act, one which the Committee was free to later repudiate. This Court therefore finds that the Committee was not required to hold a suspension hearing, and that the language used in the March 22, 1996, suspension letter did not preclude the Committee from holding a termination hearing rather than a suspension hearing on April 23, 1996.
This Court must still address Appellant's remaining due process argument. Specifically, Appellant contends that his termination violated his due process rights because he was never given notice that termination could result from the Committee's hearing on April 23, 1996. Appellant also argues that due process required the Committee to afford him a pre-termination hearing, which he alleges that he never received.[9]
"The essential requirements of due process . . . are notice and an opportunity to respond." Cleveland Board of Education v.Loudermill, 470 U.S. 532, 546 (1985). Prior to termination, a tenured public employee is only entitled to "oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." Id. Moreover, due process is not a rigid, technical construct "with a fixed content unrelated to time, place, and circumstances." Gilber v. Homar, 520 U.S. 924, 930
(1997) (quoting Cafeteria Restaurant Workers v. McElroy, 367 U.S. 886,895 (1961)). Rather, "[d]ue process is flexible *Page 16 
and calls for such procedural protections as the particular situation demands." Id. (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)).
At the outset, this Court notes that Rhode Island's procedures for dismissing a tenured teacher for cause exceed federal due process requirements. Corrigan v. Donilon, 639 F.2d 834 (1st Cir. 1981). In that case, the court reversed the termination of plaintiff teachers, finding a lack of good and just cause for their dismissal. However, the court noted that "state procedures, if followed in a timely manner, would have fully met, indeed, would have exceeded, constitutional due process standards." Id. at 837. In addition, our Supreme Court has also found that the statutorily provided procedures satisfy the dictates of due process. Barber, 418 A.2d at 20. As such, Appellant's due process claim must fail if this Court finds that the proper termination procedures were followed.
Termination of a tenured teacher is governed by § 16-13-3 and §16-13-4. Section 16-13-3(a) states, in relevant part, that
 [n]o tenured teacher in continuous service shall be dismissed except for good and just cause. Whenever a tenured teacher in continuous service is to be dismissed, the notice of the dismissal shall be given to the teacher, in writing, on or before March 1st of the school year immediately preceding the school year in which the dismissal is to become effective. The teacher shall be furnished with a complete statement of the cause(s) for the dismissal by the governing body of the school and shall be entitled to a hearing and appeal pursuant to the procedure set forth in § 16-13-4.
The procedure set forth in § 16-13-4(a) for an appeal off a tenured teacher's dismissal is as follows:
 The statement of cause for dismissal shall be given to the teacher, in writing, by the governing body of the schools at least one month prior to the close of the school year. The teacher may, within fifteen (15) days of the notification, request, in writing, a hearing before the full board. The hearing shall be public or private, in the discretion of the teacher. Both teacher and school board shall be *Page 17 
entitled to be represented by counsel and to present witnesses. The board shall keep a complete record of the hearing and shall furnish the teacher with a copy. Any teacher aggrieved by the decision of the school board shall have the right of appeal to the department of elementary and secondary education and shall have the right of further appeal to the superior court.
In interpreting these sections, our Supreme Court has stated that "[t]he statutory scheme envisions a hearing only if a teacher requests one after having received a statement of cause for his dismissal."Barber, 418 A.2d at 18. Thus, the Court has declined to "construe §16-13-4 as requiring a pretermination hearing." Id. Therefore, this Court finds that neither federal due process rights, nor Rhode Island statutory law, entitle a tenured teacher to a pre-termination hearing.
Nevertheless, the record demonstrates that Appellant did, in fact, receive a pre-termination hearing before the Committee, and that he was properly put on notice that his termination would be considered. The letter to Appellant's counsel, dated April 3, 1996, states that its purpose is to "clarify[y] . . . the standing of this matter." The letter goes on to state that "Superintendent James M. Halleyrecommends that the North Kingstown School Committee terminate Frederick Daly because of his reported use of tobacco and alcohol during school hours as well as the use of loud and inappropriate language with students in his classes on February 2, 1996." (Emphasis added.) The use of the present tense clearly demonstrates that the Committee had not determined, as of April 3, 1996, whether or not it would terminate Appellant's employment as a teacher.
This Court finds that April 3, 1996, letter provided Appellant with adequate notice of the charges against him, the proposed action to be taken against him, and the reasons supporting the proposed action. This Court therefore finds that the Committee's hearing on April 23, 1996, *Page 18 
constituted a valid termination hearing, and that Appellant's arguments to the contrary are without merit.
The record also shows that the proper procedures were adhered to even after the hearing on April 23, 1996. The Committee provided Appellant with notice of its decision to terminate him in a letter dated June, 18, 1996. That letter explicitly stated that "the North Kingstown School Committee has voted to terminate your employment with the North Kingstown School Department effective the last day of class, June 18, 1996." The letter also informed Appellant that he was being terminated because he had alcohol on his breath on February 2, 1996, and that on the same day he used loud and inappropriate language in class, and instilled fear in several of his students. Furthermore, the letter stated that consideration of Appellant's personnel file was another factor in the Committee's vote to terminate his employment. After consideration of the entire record before it, this Court finds that this letter qualified as the "statement of cause for dismissal" required under both § 16-13-3(a) and § 16-13-4(a).
Although not specifically argued by Appellant, this Court notes that he was also afforded all post-termination rights provided under Rhode Island law. After receiving his notice of termination, Appellant appealed the Committee's decision to the commissioner of education.See § 16-39-2 (permitting any person aggrieved by a decision of a school committee to the commissioner of education). While § 16-39-2 entitles a claimant to a hearing before the commissioner, Appellant waived that right and agreed to have the commissioner decide his appeal solely on the basis of various documents that had been submitted by the parties. As such, this Court finds that Appellant has waived any and all claims that he was never provided with a post-termination hearing. *Page 19 
In summary, this Court finds that all of the statutory requirements were followed. The Committee was not required to hold a suspension hearing — as Appellant never requested one — and the Committee provided Appellant with proper notice of the pre-termination hearing. Appellant also had the opportunity to claim a post-termination hearing of this matter, but voluntarily chose to waive his right to a live hearing. This Court therefore finds that, throughout the entire twelve year history of this case, Appellant has not been deprived of any statutory or due process rights. On the contrary, this Court finds that the process afforded to Appellant exceeded both statutory and constitutional requirements.
 Substantial Evidence
Appellant next argues that the Board's decision must be reversed because the Committee was not presented with substantial evidence to allow a finding that he had engaged in any inappropriate activity that could subject him to discipline. According to Appellant, there was no evidence that he had engaged in smoking or drinking during school hours, or that he had used loud and inappropriate language with his students. Appellant's position essentially boils down to an attack on the weight of the evidence before the Committee.
As already noted, this Court "shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact." Section 42-35-15(g); see also Rossi v. Employees' RetirementSystem, 895 A.2d 106, 110 (R.I. 2006). Although Appellant argues that the preponderance of the evidence does not support the Committee's factual findings, the preponderance of the evidence standard is inapplicable to the instant matter. Rather, this Court must review the entire record and determine whether the Committee's findings are supported by legally competent — also referred to as substantial — evidence. Legally competent evidence has been defined as "such relevant evidence that a reasonable mind might accept as adequate to *Page 20 
support a conclusion, and means an amount more than a scintilla but less than a preponderance." Town of Smithfield v. Churchill Banks Cos.,LLC, 924 A.2d 796, 806 (R.I. 2007) (quoting Foster-Glocester RegionalSchool Committee v. Board of Review, 854 A.2d 1008, 1012 (R.I. 2004) (further citation omitted)).
While Appellant contends that there is no evidence that he engaged in smoking or drinking during school hours, the Committee actually based its decision, in part, on its finding that Appellant had alcohol on his breath on the afternoon of February 2, 1996. A review of the testimony before the Committee shows that two students, each in a different class, testified that they detected the odor of alcohol emanating from Appellant. Each student testified that he could identify the smell of alcohol because his parents occasionally drank beer. This Court finds that this testimony, if believed, is adequate to allow a reasonable person to conclude that Appellant did, in fact, have alcohol on his breath that afternoon.[10] The Committee felt that the students were credible, and this Court declines to substitute its judgment for that of the Committee as its finding was based on legally competent evidence.
While having the odor of alcohol on one's breath is arguably "good and just cause" for dismissal, the Committee also found that Appellant used loud and inappropriate language in class, and that he instilled fear in some of his students. One of the students testified that Appellant had "yelled" at him in class and that this yelling resulted in all of the students becoming scared. The student also testified that some of the other students felt that Appellant was going to hit somebody. Both teachers that testified stated that they noticed their students returning to class were agitated. One of the teacher's students told her that Appellant had been yelling a lot and that they thought he was going to hit someone. Similarly, the other teacher *Page 21 
reported that her returning students were frightened and afraid that Appellant was going to hit one of the students.[11]
After considering the record as a whole, this Court finds that this evidence is sufficient to allow a reasonable person to conclude that Appellant had been using loud and inappropriate language, and that he had instilled fear in some of his students. The Committee found the testimony of both the student and the teachers to be credible, and its findings were based on legally competent evidence. As such, this Court once again declines to substitute its judgment for that of the Committee as to the weight of the evidence.
Appellant has not argued that the having alcohol on one's breath, using loud and inappropriate language in class, and instilling fear in students do not constitute "good and just cause" for dismissal.See § 16-13-3(a). The Board has correctly asserted that our Supreme Court has not defined what constitutes "good and just cause" in the circumstances currently before this Court. While the Board has cited this Court to numerous decisions in other jurisdictions as persuasive authority of the proper meaning of "good and just cause," this Court finds their consideration unnecessary. Simply put, this Court has no trouble whatsoever in holding that the Committee's factual findings sufficiently demonstrate good and just cause for dismissal under §16-13-3(a).
Moreover, Appellant has conceded that the Committee could properly consider his employment history in determining the degree of severity of any discipline imposed. See Appellant's Memorandum of Law at 15, n. 69 ("although Daly's employment history is certainly not unblemished, his prior discipline is relevant only to the degree of punishment that would be justified"). Appellant's personnel file demonstrates that he has been disciplined numerous times, *Page 22 
dating back to 1978. Among other things, Appellant was found to have assaulted one student and inappropriately touched another, used vulgar, insulting, and inappropriate language in class, and failed to perform his duties adequately. Appellant had even been suspended without pay or benefits from May 3, 1995, to the end of the 1994-1995 school year, and agreed that his suspension would be deemed to continue for the duration of the 1995-1996 school year.
Upon consideration of the entire record before it, this Court is hard-pressed to imagine circumstances that would more heavily favor dismissal than those present in the instant case. This Court therefore finds that there was good and just cause to terminate Appellant's employment even without regard to Appellant's history of disciplinary problems. Furthermore, upon consideration of Appellant's employment history, this Court finds it inconceivable that good and just cause for termination has not been shown. Consequently, the Board did not err when it affirmed the Committee's decision.
 Entitlement to Back Pay
Appellant argues that he was not provided with a notice of dismissal until June 18, 1996, in violation of Rhode Island law. G. L. §16-13-3(a) states that "[w]henever a tenured teacher in continuous service is to be dismissed, the notice of the dismissal shall be given to the teacher, in writing, on or before March 1st of the school year immediately preceding the school year in which the dismissal is to become effective" (emphasis added). Appellant contends that this violation entitles him to back pay for the entirety of the 1996-1997 school year. See Quattrucci v. R.I. Bd. of Regents, No. PC 04-0767, 2006 R.I. Super. LEXIS 69 (R.I.Super. May 30, 2006) (wherein the Superior Court held that § 16-13-3 mandates that notice of dismissal given on April 27, 1998, is not effective until the 1999-2000 school year). Rather than contest Appellant's *Page 23 
interpretation of the applicable law, the Committee contends that Appellant has failed to raise this issue at any of the prior hearing, and has therefore waived the argument.
In Rhode Island, the raise or waive rule is "one of our most well-established principles." Pollard v. Acer Group, 870 A.2d 429, 432
(R.I. 2005). Our Supreme Court has not "explicitly held that that raise-or-waive doctrine applies to administrative proceedings."East Bay. Cmty. Dev. Corp. v. Zoning Bd. of Review of Barrington,901 A.2d 1136, 1153 (R.I. 2006). But see Randall v. Norberg, 121 R.I. 714,721, 403 A.2d 240, 244 (1979) (wherein the Supreme Court held that "failure to raise a constitutional issue at the administrative level does not preclude its litigation in Superior Court"). The Supreme Court pointed out, however, that "[n]ot only does the [raise-or-waive doctrine] serve judicial economy by encouraging resolution of issues at the trial level, it also promotes fairer and more efficient trial proceedings by providing opposing counsel with an opportunity to respond appropriately to claims raised." Id. at 1152-1153 (quoting State v.Burke, 522 A.2d 725, 731 (R.I. 1987) (bracketed text in original)). For these reasons it is axiomatic that "[a] party who fails to bring his or her objections to the attention of the trial justice waives the right to raise them on appeal." Montecalvo v. Mandarelli, 682 A.2d 918, 926 (R.I. 1996).[12]
A review of the transcript from the April 23, 1996 hearing before the Committee shows that Appellant did not argue that any subsequent termination from employment could not be effective until the 1997-1998 school year due to the Committee's failure to provide him with a statement of cause for termination prior to March 1, 1996. In addition, it does not appear that *Page 24 
Appellant raised the notice issue in his initial appeal to the Commissioner. The record before this Court contains Appellant's brief in support of his appeal to the Board, and an examination of that brief reveals that Appellant also failed to raise the issue before the Board.
Upon consideration of the record as a whole, this Court finds that Appellant has raised the issue of the Committee's noncompliance with § 16-13-3(a) for the first time on appeal to this Court. Given the fact that Appellant has already had the opportunity to raise his legal objections to the Committee's decision on two prior appeals, this Court finds applicable the raise or waive doctrine to the instant case. As such, this Court finds that Appellant has waived the argument that he is entitled to back pay for the 1997-1998 school year due to the Committee's failure to comply with the notice provisions contained with § 16-13-3(a).[13]
 Conclusion
After a thorough review of the entire record, this Court finds that the Board's decision affirming the Committee's vote to terminate Appellant's employment as a tenured teacher was not clearly erroneous, nor was it affected by error of law. This Court also finds that the Board's affirmal of the Committee's decision was not arbitrary and capricious as the Committee's termination of Appellant was based on substantial, legally competent evidence. Therefore, the Board did not abuse its discretion in affirming the Committee, nor did the Board act arbitrarily and capriciously. Substantial rights of Appellant have not been prejudiced. Given all of the foregoing, the Board's decision is affirmed.
Counsel shall submit an appropriate order for entry in accordance with this Decision on or before Monday, February 4, 2008.
[1] In its Answer, defendant North Kingstown School Committee (the "Committee") neither admitted nor denied Appellant's allegation that its written decision had not been mailed until March 7, 2006. However, the Committee has not argued to this Court that its decision was mailed at some other point in time or that Appellant's appeal is untimely. Presumably, the parties agree that the instant appeal was timely filed. Therefore, this Court finds that the Board's written decision was, in fact, mailed on or about March 7, 2006.
[2] The record indicates that, prior to this suspension, Appellant had also taught general music classes.
[3] The nineteen documents were identified as follows:
 1. Agreement dated May 3, 1996 between the North Kingstown School Department by its attorney, David F. Reilly, Frederick Daly, and yourself regarding the terms of Mr. Daly's suspension for the balance of the 1994-1995 academic year and reduction of teaching hours for academic year 1995-1996
 2. Letter dated May 5, 1994, of Principal Manuel H. Perry directed to Mr. Daly concerning the unprofessional and inappropriate use of language in the presence of his pupils;
 3. Letter from Mr. Perry to Mr. Daly dated April 7, 1994, concerning his failure to supply the Administration with grades for the pupils' report cards;
 4. Letter dated March 16, 1994, from Mr. Perry to Mr. Daly concerning his failure to inform the school of his absence and the failure to provide class plans to the school;
 5. Memorandum from Principal Martin S. Hellewell to Mr. Daly dated December 13, 1991, regarding "[s]moking in an [u]nauthorized [r]oom;"
 6. Letter dated December 13, 1991, from Superintendent Paul T. Rennick to Mr. Daly regarding his failure to submit grades and absence of emergency lesson plans;
 7. Memorandum dated November 18, 1991, from Mr. Hellewell to Mr. Daly regarding lesson plans and reporting of grades;
 8. Continuing Teach Evaluation dated June 17, 1991, made by Mr. Hellewell concerning Mr. Daly's negative evaluation;
 9. Memorandum dated May 7, 1991, from Mr. Rennick to Mr. Daly regarding his suspension in that he "inappropriately touched [a] student in class on May 7, 1991;"
 10. Copy of transcript of hearing conducted concerning the May 7, 1991, incident;
 11. Memorandum dated April 27, 1989, from Mr. Hellewell to Mr. Daly regarding chaperoning of bus;
 12. Letter dated November 13, 1987, from Principal John M. Harrington to Mr. Daly regarding availability of alcohol counseling;
 13. Letter dated October 28, 1997, from Mr. Harrington to Mr. Daly concerning the "odor of `alcohol' on your breath as you were teaching;"
 14. Letter dated June 12, 1987, from Mr. Harrington to Mr. Daly regarding inappropriate language used to supervise children in the school's cafeteria;
 15. Letter dated February 12, 1985, from Mr. Harrington to Mr. Daly regarding his failure to secure bus [sic] for extra-curricular event;
 16. Letter dated December 18, 1982, from Mr. Harrington to Mr. Daly regarding his inappropriate language used with a student;
 17. Memorandum dated June 10, 1980 from George T. Sprague, Director of Personnel, to Mr. Daly regarding loss of wages due to a 10-day suspension;
 18. Letter dated March 20, 1980, to Mr. Daly with accompanying "Decision of North Kingstown School Committee" suspending Mr. Daly for 10 days for striking a student; and
 19. Memorandum dated November 13, 1978 from Robert A. Miller to Mr. Daly regarding inappropriate language used with students. See Letter from Peter B. Olsen to Thomas J. Liguori (April 3, 1996).
The Committee has attached a copy of each of these documents to its brief to this Court.
[4] Prior to taking any testimony, the Committee ordered that the witnesses be sequestered outside of the hearing room.
[5] Intending no disrespect, the Court refers to William Daly by his full name in order to avoid confusion given the similarity of his name to that of Appellant. The Court takes the opportunity to point out that the two are not related.
[6] The Board denied the Committee's Motion to Dismiss the Appeal on August 14, 2003, at which time the Board directed the parties to submit the record of the proceedings below before it could establish a briefing schedule.
[7] Section 16-13-4(b) provides, in relevant part, that "[t]he statement of cause for dismissal shall be given to the teacher, in writing, by the governing body of the schools . . ."
[8] Note also that § 16-2-11(a) establishes the superintendent as "the chief administrative agent of the school committee."
[9] Appellant apparently argues that his due process rights under the federal Constitution were infringed as he has cited a United States Supreme Court case for the proposition that he is entitled to a pre-termination hearing. See Cleveland Board of Education v.Loudermill, 470 U.S. 532 (1985). Appellant has not articulated a claim under the Rhode Island Constitution.
[10] Indeed, police officers testifying in DUI cases often provide similar testimony.
[11] Note that hearsay is admissible in administrative proceedings.See Foster-Glocester Regional School Committee v. Board of Review,854 A.2d 1008, 1018-1019 (R.I. 2004).
[12] There is an exception to the raise or waive doctrine, but in order to "qualify as an exception to the rule, the error complained of must be more than harmless error, the record must be sufficient to permit a determination of the issue, the issue must be of constitutional dimension, and counsel's failure to raise the issue must be attributed to a novel rule of law that counsel could not reasonably have known during trial." State v. Hallenbeck, 878 A.2d 992, 1018 (R.I. 2005) (quoting State v. Rupert, 649 A.2d 1013, 1016 (R.I. 1994)). Here, there is no suggestion that the notice provision in § 16-13-3 constituted a novel rule of law that counsel could not have reasonably discovered or raised during trial. As such, this Court finds that the narrow exception to the raise or waive doctrine cannot apply to this case.
[13] This Court notes that Appellant appears to have a justifiable claim that he is entitled to back pay for the 1997-1998 school year because of the Committee's failure to comply with the notice provision contained within § 16-13-3(a). Because this Court has determined that Appellant has waived the issue, this Court shall not give any further consideration to the merits of this argument. *Page 1